UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:15cv418-FDW

| | |
|---|---|
| TONY ALLEN HERRIN, | ) |
| Petitioner, | ) |
| vs. | ) ORDER |
| FRANK L. PERRY, | ) |
| Respondent. | ) |

**THIS MATTER** is before the Court on an initial review of Petitioner Tony Allen Herrin's pro se Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. (Doc. No. 1).

## I.  BACKGROUND

Petitioner is a prisoner of the State of North Carolina who was convicted by a Gaston County Superior Court jury on May 20, 2010, of felonious malicious use of an explosive or incendiary device or material in violation of N.C. Gen. Stat. § 14–49(a). State v. Herrin, 711 S.E.2d 802, 804 (N.C. Ct. App. 2011). The North Carolina Court of Appeals briefly summarized the State's evidence:

> [I]n the early evening hours of 19 July 2009, defendant was visiting with some of the other residents in his mobile home community in Gastonia, North Carolina, when Julie Davenport rode towards the group on her child-sized bicycle. Mrs. Davenport and her husband, Daniel Davenport, lived next-door to defendant in the mobile home community, and had been defendant's neighbors since he moved into the community three years prior. According to defendant, he had a good relationship with the Davenports, and testified that, earlier that day, at Mr. Davenport's request, defendant did some brake repair work on Mr. Davenport's vehicle, and then "went halfers [sic]" with Mr. Davenport on a "crack rock."
>
> As Mrs. Davenport peddled her small bicycle toward the gathering of neighbors, defendant approached Mrs. Davenport, grabbed the bicycle, pulled it out from under her, and began "playing tug of war with [her] bicycle." Although defendant said he and Mrs. Davenport were "just pulling, playing around," as he claimed they

1

did every day, Mrs. Davenport suggested that defendant was not being playful and that he "was cussing all the cuss words" at her as he tugged on her bicycle. When Mr. Davenport, who was outside of his mobile home at the time, saw this interaction between his wife and defendant, Mr. Davenport "started in that direction to assist [his] wife, because [he] knew she was in trouble." The struggle between defendant and Mrs. Davenport continued and, according to Mr. Davenport, as defendant tugged on the bicycle, he "kept dragging [Mrs. Davenport] towards the creek," which ran through a ditch that was in close proximity to their homes, until Mrs. Davenport "couldn't hold [her] strength anymore and [she] had to let [the bicycle] go." When Mrs. Davenport let go of the bicycle, defendant "fell back into the creek with the bicycle on top of him, and he hit a stump on this side of his head and made his head bleed." Defendant then emerged from the creek and climbed out of the ditch. By this time, Mr. Davenport had made his way over to defendant. Mrs. Davenport then took her bicycle and returned home. Although there is conflicting testimony about the exchange that followed between defendant and Mr. Davenport, the testifying witnesses appear to agree that, at some point during the exchange, Mr. Davenport put one or both of his hands around defendant's neck and, in response, defendant punched Mr. Davenport in the jaw. Mr. Davenport then left defendant and returned home.

The Davenports testified that, shortly thereafter, they looked outside and saw defendant swinging a flat-bladed shovel at a neighbor's dog and at the Davenports' cats in the yard between their home and defendant's home. Believing that defendant was trying to kill their cats, Mr. Davenport went outside and grabbed his shovel to confront defendant and Mrs. Davenport grabbed a steel or metal-tined rake and followed behind her husband. Although defendant and his witnesses testified that the Davenports were the first to arm themselves with yard tools before defendant approached them with his shovel in hand, all parties agree that, when the three met, they began "dueling with the shovels and rakes" for about ten minutes, with "shovels and rakes going everywhere."

During the course of the altercation, the three alternately wielded their gardening implements at each other "wildly," in what was described as a "full-fledged massacre." At one point, Mrs. Davenport swung the rake so that the metal tines went into [defendant's] arm and, when Mrs. Davenport "went to yank it out, [the tines] were stuck in defendant's arm, so the rake broke" and left "four big old holes" in defendant's arm, "pull[ing] the meat out of the holes." The Davenports then knocked the shovel out of defendant's hands. Shortly thereafter, Mr. Davenport said that defendant—who had been heard to say that he "would light people up" on several occasions—said he was going to "burn[ ] you all." Then, according to his own testimony, defendant took a few steps back to his house and grabbed a cut off aluminum Bud Lite can that was "full of gas" and also "had a little bit of two-cycle oil in it," which defendant had been using to start his car. "[B]ecause [he] knowed [sic] [he] had [gas in] there because [he] was working on [his] car there," defendant testified that he "slung that gas on [Mr. Davenport]" and "doused [Mr. Davenport] straight on in [his] face" and down his back. Then, defendant struck his lighter

2

three times and Mr. Davenport "was, puff, on fire." A few seconds later, after defendant ignited the material he had thrown on Mr. Davenport, according to Mr. Davenport's testimony, defendant "ran like a bitch all the way, way down past his house." Mr. Davenport then jumped in the creek to put out the fire, was taken by ambulance to the hospital, and was then transferred to the Chapel Hill Burn Center, where he was treated and released two or three days later.

Id. at 804–05. The trial court entered its judgment upon the jury's verdict and sentenced defendant to a minimum term of 133 months and a maximum term of 169 months imprisonment. Id. at 805.

On June 21, 2011, the North Carolina Court of Appeals denied Petitioner's direct appeal, finding no prejudicial error with respect to his trial or sentencing. Id. at 808. Rather than filing a petition for discretionary review in the North Carolina Supreme Court, Petitioner filed an appeal in that court pursuant to N.C. Gen. Stat. § 7A-30, which provides an appeal of right to the North Carolina Supreme Court in certain situations. The appeal was dismissed on October 6, 2011. State v. Herrin, No. 301A11, 732 S.E.2d 158 (N.C. Oct. 6, 2011) (Mem).

According to Petitioner, he filed a Motion for Appropriate Relief ("MAR") in the Gaston County Superior Court on August 13, 2012. (Pet. 3, Doc. No. 1.) In it, he raised the following claims: 1) the trial court exceeded its authority, lacked jurisdiction, and violated Petitioner's due process rights when it bound future sentences to consecutive terms; 2) the trial court violated Petitioner's due process rights and trial counsel was ineffective in calculating Petitioner's Prior Criminal Record Level; 3) the trial court violated Petitioner's equal protection rights when it refused to apply a 2009 sentencing law retroactively; and 4) Petitioner's sentence was grossly disproportionate because it was outside the mitigated range. (Pet., supra.) According to Petitioner, the MAR was denied in October, 2012. (Pet., supra.)

3

On September 11, 2014, Petitioner filed a second MAR in the Gaston County Superior Court, raising the following claims: 1) trial counsel was ineffective for stipulating to an incorrect Prior Record Level; 2) Petitioner's sentence was grossly disproportionate because it was outside the mitigated range; and 3) the trial court arbitrarily imposed consecutive sentences in future convictions. (Pet., supra, at 4.) This MAR was denied on September 23, 2014. (Pet., supra.)

On August 13, 2015, Petitioner filed a petition for writ of certiorari in the North Carolina Court of Appeals, seeking review of the MAR court's denial of his September 11, 2014 MAR. (Cert. Pet. 1, State v. Herrin, No. P15-619 (N.C. Ct. App. filed Aug. 13, 2015) available at North Carolina Supreme Court and Court of Appeals Electronic Filing Site and Document Library, https://ncappellatecourts.org/.) The petition was denied on August 24, 2015. (Order Den. Cert. Pet., Pet. 23, Doc. No. 1.)

Petitioner filed the instant federal habeas Petition on September 2, 2015, when he signed and placed it in the prison mailing system. (Pet., supra, at 14.) Petitioner raises a mish-mash of the claims raised in his two state post-conviction motions for relief. Petitioner also filed a motion to proceed in forma pauperis (Doc. No. 2), which the Court denied (Doc. No. 4). Petitioner paid the required $5.00 filing fee on August 19, 2016. This matter is now ripe for initial review.

## II. STANDARD OF REVIEW

The Court is guided by Rule 4 of the Rules Governing Section 2254 Cases, which directs district courts to examine habeas petitions promptly. Rule 4, 28 U.S.C.A. foll. § 2254. When it plainly appears from any such petition and any attached exhibits that the petitioner is not entitled to relief, the reviewing court must dismiss the motion. Id.

## III. DISCUSSION

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") provides a statute of limitations for § 2254 petitions by a person in custody pursuant to a state court judgment. 28 U.S.C. § 2244(d)(1). The petition must be filed within one year of the latest of:

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

Id. The limitations period is tolled during the pendency of a properly filed state post-conviction action. 28 U.S.C. § 2244(d)(2).

Petitioner's judgment became final on or about January 4, 2012, ninety (90) days after the North Carolina Supreme Court dismissed Petitioner's appeal, and Petitioner's time for filing a petition for writ of certiorari in the United State Supreme Court expired. See Clay v. United States, 537 U.S. 522, 525 (2003). The federal statute of limitations then proceeded to run for 191 days until August 13, 2012, when Petitioner filed his first MAR in the Gaston County Superior Court. Petitioner argues that the statute of limitations was then tolled, see § 2244(d)(2), until August 24, 2015 when the North Carolina Court of Appeals denied his petition for writ of certiorari, making the filing of his federal habeas Petition on September 2, 2015, timely. (Pet., supra, 13.)

Petitioner is incorrect.  His August 13, 2015 certiorari petition sought review of the denial of his September 11, 2014 MAR, *not* the denial of his August 13, 2012 MAR.  (Cert. Pet. 1, <u>State v. Herrin</u>, No. P15-619 (N,C. Ct. App. filed Aug. 13, 2015), <u>supra</u>.)  A search of the North Carolina Supreme Court and Court of Appeals Electronic Filing Site and Document Library, https://ncappellatecourts.org/, and Westlaw revealed no evidence that Petitioner filed a petition for writ of certiorari seeking review of the state court's denial of his August 13, 2012 MAR.  Nor does Petitioner assert that he filed any certiorari petition in the North Carolina appellate courts other than the one filed on August 13, 2015.

Therefore, the federal statute of limitations resumed running after the Gaston County Superior Court denied Petitioner's August 13, 2012 MAR.  <u>See</u> § 2244(d)(2) ("The limitations period is tolled during the pendency of a properly filed state post-conviction action.").  Giving Petitioner all possible benefit, the Court will assume the state post-conviction court denied the MAR on October 31, 2012.  The statute of limitations then ran for another 165 days until it expired on or about April 14, 2013, more than a year before Petitioner filed his second MAR.

Petitioner's September 11, 2014 MAR did not serve to resurrect or restart the federal statute of limitations.  <u>See</u> <u>Minter v. Beck</u>, 230 F.3d 663, 665–66 (4th Cir. 2000).  Thus, the instant federal Petition, filed September 2, 2015 is untimely under § 2244(d)(1)(A).

Petitioner also argues that his Petition is timely pursuant to <u>Martinez v. Ryan</u>, 132 S.Ct. 1309 (2012) and/or <u>McQuiggin v. Perkins</u>, 133 S.Ct. 1924 (2013).  (Pet., <u>supra</u>, at 13.)  "[T]he equitable rule in <u>Martinez</u>," however, "applies only to the issue of cause to excuse the procedural default of an ineffective assistance of trial counsel claim that occurred in a state collateral proceeding and has no application to the operation or tolling of the § 2244(d) statute of limitations for filing a § 2254 petition."  <u>Lambrix v. Sec., Florida Dept. of Corrections</u>, 756 F.3d

1246, 1249 (11th Cir. 2014), cert. denied sub nom. Lambrix v. Crews, 135 S. Ct. 64 (2014), and cert. denied sub nom. Lambrix v. Jones, 135 S. Ct. 1894 (2015) (citations and internal quotation marks omitted).  In other words, Martinez does not provide an exception to the federal statute of limitations.

In McQuiggin, the Supreme Court recognized a "miscarriage of justice" exception to § 2244(d)(1)(D). 133 S.Ct. at 1928.  Under that exception, a credible showing of actual innocence may allow a petitioner to pursue his constitutional claims on the merits notwithstanding expiration of the statute of limitations. Id. at 1931.  The miscarriage of justice exception, however, applies only to cases "in which new evidence shows 'it is more likely than not that no reasonable juror would have convicted [the petitioner].'"  Id. at 1933 (quoting Schlup v. Delo, 513 U.S. 298, 329 (1995)) (internal quotation marks omitted).  "To be credible, such a claim requires [the] petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." Schlup, 513 U.S. at 324.  Here Petitioner has not identified any new, reliable evidence that was not presented at trial to support his allegations of constitutional error.  Thus, the McQuiggin exception is likewise of no help to Petitioner.

**IV.   CONCLUSION**

The instant Petition is untimely pursuant to § 2244(d)(1)(A), and Petitioner does not argue that he is entitled to equitable tolling of any of his claims. See e.g. Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005) (Equitable tolling requires a showing "(1) that [the petitioner] has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way" of filing a timely habeas petition.)  Additionally, the Court finds justice does not require that

Petitioner be warned his case is subject to dismissal on statute of limitations grounds prior to the Court dismissing the Petition as untimely. See Hill v. Braxton, 277 F.3d 701, 706 (4th Cir. 2002). Such warning is unnecessary because Petitioner addressed and demonstrated an understanding of the statute of limitations issue in his § 2254 petition. (Pet., supra, at 13.)

**V.     ORDER**

    **IT IS, THEREFORE, ORDERED** that:

1) Petitioner's Petition for Writ of Habeas Corpus (Doc. No 1) is **DISMISSED** as untimely; and

2) Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases, the Court declines to issue a certificate of appealability as Petitioner has not made a substantial showing of a denial of a constitutional right. 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 474, 484 (2000) (holding that when relief is denied on procedural grounds, a petitioner must establish both that the correctness of the dispositive procedural ruling is debatable, and that the petition states a debatably valid claim of the denial of a constitutional right).

Signed: August 25, 2016

_(signature)_

Frank D. Whitney
Chief United States District Judge